UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRON BRIDGE MORTGAGE FUND, LLC,<br><br>Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A., et al.,<br><br>Defendants. | Case No. 20-cv-08581-PJH<br><br>**ORDER GRANTING DEFENDANT BANK OF AMERICA'S MOTION TO DISMISS**<br><br>Re: Dkt. No. 28 |

Defendant Bank of America's motion to dismiss came on for hearing before this court on April 22, 2021. Plaintiff appeared through its counsel, Jacoby Perez. Defendant appeared through its counsel, Austin Kenney. Having read the papers filed by the parties and carefully considered their arguments and the relevant legal authority, and good cause appearing, the court hereby GRANTS Bank of America's motion, for the following reasons.

**I.  Background**

Plaintiff Iron Bridge Mortgage Lending, LLC, ("Iron Bridge") is a financial institution based in Portland, Oregon. Defendant Sergio Alvarez ("Alvarez") is an individual residing in Alameda County. Defendant Bank of America, N.A., ("BofA") is a bank registered in Delaware, headquartered in Charlotte, North Carolina.

In November 2015, Alvarez purchased the real property located at 7005 Skyline Boulevard, Oakland, CA 94611 (the "property") from Iron Bridge. Alvarez and his company, Superior Assets, LLC, entered into a loan agreement with Iron Bridge in December 2015, which provided for a series of loans for a new construction project on

1   the property. In connection with funding this construction project, Iron Bridge issued
2   checks to various vendors and subcontractors and provided the checks to Alvarez to
3   distribute. Overall, Iron Bridge issued 23 checks to 14 vendors, dated between March
4   2016 and December 2017.

5   In September 2017, Alvarez defaulted on the loan. Iron Bridge bought back the
6   property at an April 2018 foreclosure auction. Following the foreclosure, Alvarez's
7   vendors approached Iron Bridge and demanded payment for the work they performed on
8   the property. Iron Bridge alleges that it found out through a subpoena issued to BofA that
9   Alvarez forged endorsements onto the 23 checks intended for vendors and
10  subcontractors, totaling $168,282.05, and deposited them into his own or Superior
11  Assets' accounts at BofA rather than distributing them. Iron Bridge further alleges that
12  BofA accepted these checks for deposit despite irregularities in the manner in which they
13  were deposited, including the forged endorsements and that they were deposited into
14  accounts that were not affiliated with the payee indicated on the checks.

15  This suit was initiated by complaint filed on December 4, 2020. Dkt. 1. Iron Bridge
16  filed the first amended complaint ("FAC") on February 12, 2021. Dkt. 19. BofA filed the
17  present motion to dismiss on February 26, 2021. Dkt. 28. Alvarez filed a motion to
18  dismiss the FAC (Dkt. 43) on the same date as the hearing on BofA's motion, April 22,
19  2021. At the time of this order, Alvarez's motion remains pending.

20  **II.     Legal Standard**

21  A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the
22  legal sufficiency of the claims alleged in the complaint. Ileto v. Glock, 349 F.3d 1191,
23  1199-1200 (9th Cir. 2003). Under Federal Rule of Civil Procedure 8, which requires that
24  a complaint include a "short and plain statement of the claim showing that the pleader is
25  entitled to relief," Fed. R. Civ. P. 8(a)(2), a complaint may be dismissed under Rule
26  12(b)(6) if the plaintiff fails to state a cognizable legal theory, or has not alleged sufficient
27  facts to support a cognizable legal theory. Somers v. Apple, Inc., 729 F.3d 953, 959 (9th
28  Cir. 2013).

While the court is to accept as true all the factual allegations in the complaint, legally conclusory statements, not supported by actual factual allegations, need not be accepted. Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009). The complaint must proffer sufficient facts to state a claim for relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 558-59 (2007) (citations and quotations omitted).

"A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." Id. at 679. Where dismissal is warranted, it is generally without prejudice, unless it is clear the complaint cannot be saved by any amendment. Sparling v. Daou, 411 F.3d 1006, 1013 (9th Cir. 2005).

**III. Discussion**

The FAC alleges the following causes of action against either BofA on its own or both BofA and Alvarez together: (1) negligence, (2) breach of warranty, (3) breach of contract, (4) declaratory relief, and (5) violation of California Business & Professions Code § 17200. The sixth claim, for fraud, is only alleged against Alvarez and is thus not discussed here.

The FAC identifies the first three claims by reference to the California Commercial Code. The parties discuss in their briefing whether the California common law analogs to each of these Commercial Code claims should remain actionable. The court here makes no decision whether the Commercial Code forecloses common law claims under California law because Iron Bridge made clear at the hearing that it intended to proceed solely under the Commercial Code rather than under common law.

**A. Claims 1, 2, & 3 – Statute of Limitations**

BofA argues that Iron Bridge's three Commercial Code claims, sounding in conversion, are subject to a three-year statute of limitations. An instrument is converted if

3

"a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment." Com. Code § 3420(a). Each "altered, forged, or unauthorized check" gives rise to a separate cause of action. Edward Fineman Co. v. Superior Court, 66 Cal.App.4th 1110, 1118 (1998). And the cause of action accrues at the time the instrument is negotiated. AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal.App.4th 631, 639 (2006), as modified (Oct. 30, 2006). Section 3118(g) requires initiation of actions within three years of accrual for claims under section 3420.

Section 3118(g) also requires initiation of actions within three years of accrual for breach of warranty claims (such as plaintiff's section 3417 claim), and other enforcement actions arising from the same division of the code (including plaintiff's section 3405 claim for negligence). Section 4111 similarly requires initiation of a breach of contract action under section 4401 within three years of accrual. All three of plaintiff's Commercial Code claims are thus bound by a three-year statute of limitations.

Tolling of the limitations period based on a plaintiff's delayed discovery of defendant's actions is limited. The California Court of Appeal stated in a case factually similar to this one, "To the extent our courts have recognized a 'discovery rule' exception to toll the statute, it has only been when the defendant in a conversion action fraudulently conceals the relevant facts or where the defendant fails to disclose such facts in violation of his or her fiduciary duty to the plaintiff." AmerUS Life Ins. Co. v. Bank of Am., N.A., 143 Cal.App.4th at 639.

BofA argues that the three-year period for bringing claims has expired for all except one of these negotiated checks. BofA highlights that all but one of the checks underlying Iron Bridge's claims and attached to the FAC—Check No. 11331 for $1,600—were negotiated more than three years before Iron Bridge filed this action on December 7, 2020. Dkt. 19-2, Ex. 6, at pp. 17-39; Dkt. 1. The last-in-time check, negotiated on December 20, 2017, is the only one remaining actionable within the Commercial Code's three-year statute of limitations. See Dkt. 19-2, Ex. 6, at p. 38. BofA concludes that because each of the 22 other checks represents its own cause of action, each is time

4

barred. BofA heads off any argument from Iron Bridge regarding the applicability of the statute of limitations, providing variously (1) that conversion of this sort is not subject to delayed discovery tolling, (2) that the "continuing tort" theory is inapplicable to conversion of instruments, and (3) that the only exceptions to allow for delayed discovery tolling (if the defendant fraudulently concealed the conversion or if the defendant had a fiduciary duty to the plaintiff) are inapplicable here.

Iron Bridge counters that delayed discovery tolling of the statute of limitations applies here because defendant Alvarez fraudulently concealed the conversion of the checks, precluding discovery of the conversion. BofA, on reply, resists Iron Bridge's effort to "shoehorn itself" into an exception in its claim against BofA based on Alvarez's potential fraud. BofA additionally clarifies that it owes no fiduciary duty to Iron Bridge.

Here, the Commercial Code limitations periods have expired for all except the last check negotiated. All but one of the checks at issue here were negotiated more than three years prior to Iron Bridge's initiation of this suit, and Iron Bridge does not fall into an exception allowing for tolling of the statute of limitations. Iron Bridge does not allege that BofA fraudulently concealed the checks here, and Iron Bridge nowhere alleges that BofA owed it a fiduciary duty. Even if Iron Bridge's claims stood on their own, proceeding under California Commercial Code sections 3405 (negligence), 3417 and 4207 (breach of warranty), and 4401 (breach of contract) rather than sounding in conversion, they are still time-barred because those provisions also have three-year limitations periods.

Therefore, the claims based on all the checks except for the one dated December 20, 2017, are time-barred. As there is one check surviving, the court considers the merits of the three Commercial Code claims in turn.

**B. Claim 1 – Negligence**

Iron Bridge advances a cause of action for statutory negligence on the theory that BofA owed a duty to check payors and breached that duty by cashing the checks endorsed by Alvarez but intended for other payees. Commercial Code section 3405 provides that if an employer entrusts an employee (or independent contractor) with

5

responsibility for a check, and the employee fraudulently endorses the check, the bank accepting the check must bear the loss to the extent it failed to exercise ordinary care. See Mills v. U.S. Bank, 166 Cal.App.4th 871, 889 (2008); see also Lee Newman, M.D., Inc. v. Wells Fargo Bank, N.A., 87 Cal.App.4th 73, 82 (2001).

BofA seeks dismissal of the claim for negligence under section 3405. BofA notes in significant part, "that section only applies to occasions where a dishonest employee negotiates a check payable to their employer into their personal account, either via forged endorsement or without any endorsement at all." Dkt. 28 at 15. Iron Bridge argues in opposition that BofA failed to exercise ordinary care when it accepted and deposited the fraudulently endorsed checks into Alvarez's accounts because there were apparent irregularities in their negotiation and they were not deposited into the accounts belonging to the payees. Iron Bridge avers that Alvarez served as its independent contractor for purposes of distributing the checks issued to the various construction vendors and contractors. Iron Bridge briefly refers to the factors articulated in California Labor Code section 2750.5 to suggest the establishment of an independent contractor relationship.

In its reply, BofA demands more detail. It asserts, "Iron Bridge fails to allege any facts surrounding the circumstances of the deposits that would demonstrate whether or not Bank of America exercised ordinary care." BofA notes hypothetically that Alvarez may have made these deposits via ATM or mobile banking app, and that Iron Bridge's pleadings fail to clarify how the deposit of the checks failed to meet a standard of ordinary care.

Here, BofA is correct that Iron Bridge did not sufficiently plead facts that would demonstrate BofA failed to exercise ordinary care. Further, Iron Bridge's pleadings fail to establish that Alvarez was actually operating as its independent contractor for purposes of distributing the checks, and for this reason, Iron Bridge cannot avail itself of the narrow statutory cause of action. For both of these reasons, Iron Bridge's claim for negligence under Commercial Code section 3405 is DISMISSED as to BofA.

### C. Claim 2 – Breach of Warranty

Iron Bridge advances a claim for breach of warranty based on portions of the Commercial Code that govern warranties owed by parties related to payment of checks. Commercial Code section 3417, titled "Warranties of Presentor," provides, in pertinent part:

> "If an unaccepted draft is presented to the drawee for payment or acceptance and the drawee pays or accepts the draft, (i) the person obtaining payment or acceptance, at the time of presentment, and (ii) a previous transferor of the draft, at the time of transfer, warrant all of the following to the drawee making payment or accepting the draft in good faith:
> (1) The warrantor is, or was, at the time the warrantor transferred the draft, a person entitled to enforce the draft or authorized to obtain payment or acceptance of the draft on behalf of a person entitled to enforce the draft . . .

Com. Code § 3417(a)(1). Under the Commercial Code, a "drawee" is defined as "a person ordered in a draft to make payment," and a "drawer" is defined as "a person who signs or is identified in a draft as a person ordering payment." Com. Code §§ 3103(a)(2)-(3). BofA describes, "section (a)(1) is in effect a warranty 'that there are no unauthorized or missing indorsements.'" Com. Code § 3417, cmt. 2.

Section 4207, titled "Warranties of Customer or Collecting Bank on Transfer [. . .]," provides:

> "A customer or collecting bank that transfers an item and receives a settlement or other consideration warrants to the transferee and to any subsequent collecting bank that all of the following are applicable:
> (1) The warrantor is a person entitled to enforce the item…"

Com. Code § 4207(a)(1). Commercial Code section 4105 defines a "collecting bank" as "a bank handling an item for collection except the payor bank." Com. Code § 4105(5). A "payor bank" is defined as "a bank that is the drawee of a draft." Id. at § 4105(3). Thus, the warranties afforded by section 4207 flow from the collecting bank to the payor bank.

BofA moves to dismiss Iron Bridge's claim for breach of the warranties afforded under Commercial Code sections 3417 and 4207 because Iron Bridge is not entitled to enforce those warranties. Rather, based on the positions of the parties in relation to the checks, Iron Bridge instead owes a warranty to BofA.

7

Iron Bridge argues in opposition that the code sections "provide a warranty as to payment to authorized person of the transferred items for which a settlement or other consideration has been received. This warranty obligation, placed upon banks, extends to drawers of transferred items." Iron Bridge asserts that BofA breached these warranties by failing to exercise due diligence to ensure proper endorsements on the checks deposited by defendant Alvarez.

Here, BofA's interpretation is more accurate. Under section 3417, the warranty is afforded to and enforceable by the drawee—that is, the depository bank, which in this instance is BofA—and not the drawer—here, Iron Bridge. And the section 4207 warranty flows from Iron Bridge's bank as the collecting bank to BofA as the payor bank. Iron Bridge is not owed a warranty by BofA. The claim for breach of warranty under the Commercial Code is DISMISSED as to BofA.

### D. Claim 3 – Breach of Contract

Iron Bridge advances a claim for breach of contract on the theory that BofA, bound by the terms of its depository agreement with Alvarez, had an obligation not to cash checks with fraudulent endorsements of payees. Commercial Code section 4401 governs the circumstances in which a bank may charge its customer's account. See Com. Code § 4401.

California law recognizes that in certain circumstances, a third-party may enforce a contract where it was not a signatory, but a third-party may only enforce a contract when that contract was entered into expressly for the benefit of the third-party. Cal. Civ. Code § 1559. A third-party may enforce contract rights where (1) the third-party would in fact benefit from the contract, (2) a motivating purpose of the contracting parties was to provide a benefit to the third-party, and (3) permitting the third-party to bring its own breach of contract action against a contracting party is consistent with the objectives of the contract and the reasonable expectations of the contracting parties. Goonewardene v. ADP, LLC, 6 Cal.5th 817, 829-30 (2019). "The fact that [a third-party] is incidentally named in the contract, or that the contract, if carried out according to its terms, would

8

inure to his benefit, is not sufficient to entitle him to demand its fulfillment. It must appear to have been the *intention of the parties* to secure to him personally the benefit of its provisions." Walters v. Calderon, 25 Cal.App.3d 863, 871 (1972) (emphasis in original).

BofA seeks dismissal of Iron Bridge's Commercial Code section 4401 claim because (1) Iron Bridge is not an intended third-party beneficiary of a contract between BofA and its customer, Alvarez, and (2) no contractual relationship between Iron Bridge and BofA existed to obligate BofA to not charge Iron Bridge's checks bearing fraudulent endorsements under Commercial Code section 4401. Iron Bridge argues that it should be able to pursue a breach of contract claim against BofA based on the bank's depository agreement with Alvarez. Iron Bridge alleges that it, as a drawer of checks, belongs to a class of people intended to benefit from a contract between a bank and its depositor and thus qualifies as a third-party beneficiary.

BofA argues in response, "even though Bank of America is aware that some third-party will eventually engage in a banking transaction with Alvarez, benefiting those third-parties is not the purpose of entering into the deposit relationship." BofA remarks, "there is no case law whatsoever that holds a non-customer drawer of a check can be deemed a beneficiary of a depositor's contract with the depository bank."

Here, Iron Bridge's position is untenable. Iron Bridge is not a customer of BofA, and it does not otherwise plead a contractual relationship with BofA that would support a claim for breach of contract pursuant to section 4401. Moreover, considering the factors enumerated in Goonewardene, Iron Bridge is not expressly intended to benefit from the depository agreement between defendant Alvarez and BofA. Iron Bridge has not pleaded that a motivating purpose of the agreement between Alvarez and BofA was to provide a benefit to this mortgage lender. Neither Alvarez nor BofA could have expected Iron Bridge to bring suit to enforce their depository agreement. Iron Bridge, as a member of the broad class of persons expecting BofA to reject fraudulently endorsed checks, has such a distant interest in the depository agreement between BofA and its customer that it is simply too attenuated to justify its claim for breach. Thus, Iron Bridge's claim for

9

1 breach of contract is DISMISSED as to BofA.

### E. Claim 4 – Declaratory Relief

A complaint for declaratory relief is sufficient "if it sets forth facts showing the existence of an actual controversy relating to the legal rights and duties of the respective parties *under a written instrument* . . . and requests that the rights and duties of the parties be adjudged by the court." Ludgate Ins. Co. v. Lockheed Martin Corp., 82 Cal.App.4th 592, 605 (2002) (emphasis added).

BofA asserts that the claim for declaratory relief must be dismissed where it is premised on Iron Bridge's Commercial Code claims. BofA adds that a declaratory relief claim, adjudicating a controversy regarding rights and obligations under a written agreement, cannot stand in this circumstance because there is no written agreement between BofA and Iron Bridge. Iron Bridge reiterates that it is a third-party beneficiary of the depository agreement between defendant Alvarez and BofA, and on that basis seeks a judicial determination that BofA was negligent.

Here, there is no written agreement between Iron Bridge and BofA. Iron Bridge's attempt to rely on the depository agreement between Alvarez and BofA through a third-party beneficiary theory is unavailing. There is not an actual controversy involving a written agreement between Iron Bridge and BofA for this court to adjudicate. Iron Bridge's claim for declaratory relief is DISMISSED as to BofA.

### F. Claim 5 – Unfair Competition Law

Section 17200, establishing a right of action for unfair competition, provides: "[U]nfair competition shall mean and include any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. "'Because . . . section 17200 is written in the disjunctive, it establishes three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent.'. . . 'A practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' or vice versa.'" Lippitt v. Raymond James Fin. Servs., Inc., 340 F.3d 1033, 1043 (9th Cir. 2003) (quoting Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co., 20 Cal.4th 163,

180 (1999)). To constitute an "unlawful" business act, a plaintiff must allege facts sufficient to show a violation of some underlying law. People v. McKale, 25 Cal. 3d 626, 635 (1979).

BofA avers that Iron Bridge's claim for violation of California Business & Professions Code section 17200 must fail because it relies on a predicate claim of a violation of another law or statute, or allegations of unfair, unlawful, or fraudulent conduct. BofA reasons that because Iron Bridge's Commercial Code claims should be dismissed (as discussed above), none of them may form the basis of the section 17200 claim. Further, the section 17200 claim additionally fails where Iron Bridge does not allege unfair, unlawful, or fraudulent business practices separate from those giving rise to the enumerated claims. In opposition, Iron Bridge argues that its section 17200 claim is sufficiently pleaded because the Commercial Code violations have been sufficiently pleaded.

Here, Iron Bridge does not proceed under the theories that BofA acted either unfairly or deceptively—its argument is based purely on BofA's unlawful conduct, so the other theories are not considered. In this way, BofA is correct that Iron Bridge's claim under section 17200 is derived from its other claims. Iron Bridge's claims against BofA for violations of the Commercial Code (including statutory negligence, breach of warranty, and breach of contract) are all deficient. Because Iron Bridge fails to state a claim of unlawful action by BofA, it also fails to state a claim for relief under section 17200. Therefore, Iron Bridge's UCL claim is DISMISSED as to BofA.

**IV. Conclusion**

For the foregoing reasons, defendant Bank of America's motion to dismiss the FAC is GRANTED as to BofA. It is clear from the FAC that the Commercial Code violations pursued here are time-barred as to all but one $1600 check, but these claims additionally fail on the merits. Amendment of these claims would be futile. Therefore, defendant Bank of America is DISMISSED WITH PREJUDICE.

**IT IS SO ORDERED.**

Dated: May 14, 2021

                                        /s/ Phyllis J. Hamilton
PHYLLIS J. HAMILTON
United States District Judge